MacNaughton, Respondent, vs. United Motor Sales, Inc., and another, Appellants.

*March 6—April 3, 1956.*

For the appellants there were briefs by *Welsh, Trowbridge, Wilmer & Bills,* and oral argument by *Lloyd J. Planert,* all of Green Bay.

For the respondent there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Fred F. Kaftan.*

STEINLE, J.    On September 30, 1953, the plaintiff W. R. MacNaughton delivered his 1952 Pontiac automobile to the defendant, United Motor Sales, Inc., pursuant to a written contract between the parties whereby MacNaughton agreed to leave the car with said company for not less than thirty days on a consignment basis for sale.  By the terms of the contract, the title to the car was to remain in the consignor until sold by the consignee at a price of not less than $1,650 net to the consignor.  When the contract was executed, United Motor Sales, Inc., was a licensed and bonded used-car dealer.  Its license and bond expired at the end of 1953. The defendant, Norbert DeWitt, handled the transaction for the dealer. MacNaughton indorsed his certificate of title to the car in blank, and gave it to the dealer to expedite sale in the event that a buyer would be found while he was out of town on a sales trip.  On October 5, 1953, the defendant, without the knowledge or consent of the plaintiff, mortgaged the plaintiff's car, together with a number of others, to Rock Finance Company, an innocent party, as security for money borrowed.  On April 7, 1954, the defendant sold plaintiff's car, together with others, to California Car Company operated by Norman Watermolen, an innocent purchaser for value.  At that sale DeWitt represented United Motor Sales, Inc., and Watermolen represented California Car Company. A representative of Rock Finance Company was also present at the sale.  Watermolen was aware of the mortgage held by Rock Finance Company, but did not know of the consignment contract or plaintiff's interest in the car.  The purchase price

was $1,100. A check for the purchase price of the cars, including that of the plaintiff, was issued and delivered by the California Car Company to United Motor Sales, Inc., and was immediately indorsed by DeWitt, in his capacity as secretary-treasurer, and turned over to Rock Finance Company in satisfaction of its chattel mortgage. Of record in the case is the stipulation of the parties that United Motor Sales, Inc., did not have any actual control over the disposition of the proceeds of such sale. The plaintiff did not learn of the satisfying of the mortgage or the sale of the car until after the sale was made. The car was never returned to him, nor did he receive any consideration for it.

In its findings of fact the court determined that the defendants on October 5, 1953, by mortgaging plaintiff's car, intentionally and maliciously converted and embezzled it, and that they were guilty of indulging in an unconscionable practice relating to their business as a used-car dealer, and of having made a fraudulent transaction whereby the plaintiff was defrauded and deprived of his automobile. The court found that the value of the car on October 5, 1953, was $1,650, and concluded that the plaintiff was entitled to damages of $1,650 together with interest from October 5, 1953, and the costs of the action. The damage item in the judgment was predicated upon the findings of fraud, conversion, and embezzlement. The findings in such regard are amply sustained by credible evidence. The judgment in so far as it appertains to damages, is valid.

The issue upon this appeal concerns primarily that portion of the judgment relating to the court's determination that the plaintiff sustained "loss" by reason of acts of the defendant dealer on October 5, 1953, and that said acts constitute grounds for revocation or suspension of the dealer's license so as to entitle the plaintiff to invoke the penalty of the bond of the dealer as a licensee as provided in sec. 218.01 (2) (c) and (2) (h), Stats. The defendant at the trial had challenged

the jurisdiction of the court to render a determination with respect to such matter. Identical challenge is presented here.

Sec. 218.01 (1a), Stats., authorizes the state motor vehicle department to issue a license to dealers such as the United Motor Sales, Inc., and to supervise the same. Sec. 218.01 (3) (a) specifies the grounds for denial, suspension, or revocation of such license. Sec. 218.01 (3) (c) and sec. 218.01 (5) (b) provide that no such license shall be suspended or revoked except after a hearing thereon before the department or one of its examiners, and the department shall base its rulings and orders only on written findings reported to it. Sec. 218.01 (3) (f) provides that any interested person aggrieved by an order of the department in a matter of this kind shall be entitled to a judicial review as provided in ch. 227, Stats.

Sec. 218.01 (2) (h), Stats., provides in part:

"Provided the licensor has reasonable cause to doubt the financial responsibility or the compliance by the applicant or licensee with the provisions of this statute the licensor may require such applicant or licensee to furnish and maintain a bond in such form, amount, and with such sureties as it shall approve, but not less than $5,000, nor more than $15,000, conditioned upon such applicant or licensee complying with the provisions of the statutes applicable to the licensee and as indemnity for any loss sustained by any person by reason of any acts of the licensee constituting grounds for suspension or revocation of his license hereunder. The bonds shall be executed in the name of the state of Wisconsin for the benefit of any aggrieved parties, but the penalty of said bond shall not be invoked except after a court adjudication thereof."

While under sec. 218.01, Stats., the department may suspend or revoke the license of an automobile dealer—and is the only agency that may do so—there is no power in the department to adjudicate the loss sustained by any person by virtue of an act that constituted a ground for such sus-

pension or revocation. The determination of such loss and the consequent damages is for the court. The penalty in a bond of this kind is the amount which the obligors agreed to pay in the event that a loss has been sustained by virtue of an act for which a license may be suspended or revoked by the department. In view of the language in sec. 218.01 (2) (h), "the penalty of said bond shall not be invoked except after a court adjudication thereof," it is plain that an aggrieved person does not become entitled to payment under the bond unless such payment is ordered in an action against the obligors of the bond wherein there is a finding that a loss has been sustained as a result of an act for which a license may be suspended or revoked by the department, and further, that there is a finding of the amount for which the obligors are liable.

In the instant cause, the bond, if one had been filed with the department, is not in evidence. The defendants have not been sued as obligors under the bond. Sureties, if there are such, have not been included as parties to the action. The presentation and determination of issues as to whether a loss has been sustained by the plaintiff by reason of acts of the defendants constituting grounds for suspension or revocation of the license by the department, must be considered as surplusage and of no effect. At most the court's adjudication with respect to this matter was of an advisory nature only, and was of no binding force. The determination was not essential as a condition precedent to the commencement of an action upon the bond, nor would it be *res adjudicata* with reference to similar issues raised in an action upon the bond. There is no method whereby the judgment in this respect could be legally enforced. We are constrained to hold that this portion of the judgment is a nullity, and that the court exceeded its jurisdiction in rendering the same. Since it is of no effect, we are obliged to direct that it be eliminated.

*By the Court.*—The judgment is modified to the extent that the portion thereof relating to the determination that the plaintiff is a person who sustained loss by reason of the acts of the defendant licensee which constituted grounds for suspension or revocation of the license so as to entitle the plaintiff to invoke the penalty of the bond, be stricken. In all other respects the judgment is affirmed. Cause remanded with direction to modify the judgment in the manner specified. No costs to either party. Appellant to pay the clerk's fees.